**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

DOREITHA M. BROOKS,                       )
                                          )
                    Plaintiff,            )
                                          )
          v.                              )          Case No. 06-CV-2340-KGS
                                          )
HOLIDAY HEALTHCARE, L.L.C.                )
                                          )
                    Defendant.            )

<u>**MEMORANDUM AND ORDER**</u>

This matter comes before the court upon defendant Holiday Healthcare, L.L.C.'s Motion for

Summary Judgment (Doc. 34) and Brief in Support (Doc. 35).[1]  Plaintiff Doreitha M. Brooks has

filed a Response to Defendant's Motion for Summary Judgment (Doc. 38).[2]  Defendant has filed a

Reply Brief to Plaintiff's Response to Defendant's Motion for Summary Judgment (Doc. 41).  The

issues are fully briefed and thus ripe for disposition.

**I.      Facts**

Doreitha Brooks (plaintiff), a Licensed Practical Nurse (LPN), was hired by the prior owner

of Holiday Resort, a nursing facility in Emporia, Kansas, in 1999.[3]  Ms. Brooks was hired as a

charge nurse, and retained that position from the time of her hiring in 1999 until the termination of

her employment on September 9, 2004.[4]  Ms. Brooks has been a LPN since October 14, 1994, and

has worked at other nursing facilities, both before, and after, working for Holiday.[5]

---

[1] All references to the record involving "lettered" exhibits are attachments to Defendant's
Brief in Support of Summary Judgment (Doc. 35).
[2] All references to the record involving "numbered" exhibits are attachments to Plaintiff's
Response to Defendant's Motion for Summary Judgment (Doc. 38).
[3] Defendant's Ex. B, Deposition of Doreitha M. Brooks, at 43–44.
[4] *Id.*
[5] *Id.* at 59; Defendant's Ex. E, Brooks Deposition Ex. 2; Defendant's Ex. B, Deposition
of Doreitha M. Brooks, at 30–31.

In February of 2003, the defendant, Holiday Healthcare, L.L.C., purchased Holiday Resort from its previous owners, and has operated the facility since then.[6]  Ms. Brooks was retained in her position by the new owners after the sale of the facility.

Ms. Brooks usually worked the third shift, from 10:00 p.m. to 6:00 a.m. and, as the charge nurse, was responsible for supervising a staff of Certified Nursing Aides and Certified Medication Aides assigned to that shift.[7]  In addition to her supervisory duties, Ms. Brooks also had a variety of resident care responsibilities.[8]  As the only LPN on duty during her shift, Ms. Brooks was the only person authorized to access and administer medications to residents.[9]  Ms. Brooks' duties also included maintaining and updating resident's medical charts, and preparing incident reports in the event that accidents or medical emergencies occurred during her shift.[10]

As a charge nurse, Ms. Brooks was supervised by the facility's Director of Nursing (DON). During the time in which defendant has owned Holiday Resort, there have been two Directors of Nursing: Cynthia Brinkman, R.N., was the DON from February 2003 to March 2004 and was succeeded by Terri Stewart, R.N., who has served as DON from March 2004 to the present.[11]

Plaintiff possessed a copy of the Employee Handbook which detailed work infractions and their possible consequences.  Class II infractions included failure to report an incident, failure to document or initial appropriately or falsify reports for resident's care, failure to follow codes, protocols or policies, and unsatisfactory performance.  An employee's first Class II offense

---

[6] Defendant's Ex. A, Affidavit of Mike Kerbs, at ¶¶ 1–2.
[7] Defendant's Ex. B, Deposition of Doreitha M. Brooks, at 45–49.
[8] *Id.*
[9] *Id.*
[10] *Id.*
[11] *Id.* at 67–68; Defendant's Ex. C, Affidavit of Cynthia Brinkman, R.N., ¶ 1; Defendant's Ex. D, Affidavit of Theresa Stewart, R.N., ¶¶ 1–2.

generated a written warning, followed by a three day suspension and then termination if any subsequent offenses occurred.

On June 20, 2003 Ms. Brooks was counseled by her supervisor, DON Brinkman, for failing to document Medicare Part B services provided to a resident on her shift.[12]

On June 25, 2003 a chart audit was conducted which resulted in further disciplinary action against Ms. Brooks.  The chart audit found that Ms. Brooks had failed to fully document services provided to a resident receiving Medicare Part A benefits.  As a result of this documentation error, Ms. Brooks received an Employee Disciplinary Report from DON Brinkman.[13]

Ms. Brooks received another counseling statement on July 25, 2003.  This statement was issued as a result of Ms. Brooks' failure to document the time of a resident's fall that had occurred on July 19.  In addition to failing to document the fall, Ms. Brooks had also failed to document that she had taken the resident's vital signs, and had not included fall intervention steps in the resident's care plan.[14]

Ms. Brooks received another Disciplinary Report for actions which occurred on July 28, 2003.  A resident had suffered a skin tear during Ms. Brooks' shift, but Ms. Brooks had failed to document the skin tear on the resident's chart.  The Report documented this failure, and reminded Ms. Brooks of the proper protocol to follow when a resident suffered a skin tear.  In addition, the Disciplinary Report reminded Ms. Brooks not to borrow narcotics from one resident for use with another resident, as this practice violated state regulations.[15]

On August 20, 2003, Ms. Brooks received a Disciplinary Report based on an incident that

---

[12] Defendant's Ex. G, Brooks Deposition Ex. 11.
[13] Defendant's Ex. H, Brooks Deposition Ex. 12.
[14] Defendant's Ex. I, Brooks Deposition Ex. 14.
[15] Defendant's Ex. J, Brooks Deposition Ex. 15.

happened on August 10, 2003.  A chart audit found that Ms. Brooks had failed to document Medicare Part B services provided to a resident.  Ms. Brooks was told by DON Brinkman that a third offense of this nature would result in her termination.[16]

On November 2, 2003, Ms. Brooks received a Disciplinary Report for her failure to complete the batch fill of narcotics, and her failure to log in medications.  This counseling was performed by the Assistant DON, and was confirmed by DON Brinkman.[17]

Two days later, on November 4, 2003, Ms. Brooks was disciplined again for signing for narcotics and failing to process them or lock them in the narcotics cabinet.[18]

On February 26, 2004, Ms. Brooks received a Disciplinary Report based on several performance problems having to do with the administration of medicine to residents.  The disciplinary action was administered by DON Brinkman, and was confirmed by the facility's administrator, Mike Kerbs.  Mr. Kerbs also noted that Ms. Brooks' next medication error would be considered grounds for termination.  As noted previously, not long after this incident DON Brinkman was replaced with a new DON, Terri Stewart.[19]

On June 3, 2004, DON Stewart issued Ms. Brooks a verbal warning for an incident concerning a resident.  A resident had suffered a significant skin tear the previous night, during Ms. Brook's shift, but Ms. Brooks had failed to prepare an incident report concerning the skin tear.  In addition, Ms. Brooks was disciplined for not properly disposing of the resident's bloody clothes.

---

[16] Defendant's Ex. K, Brooks Deposition Ex. 18.

[17] Defendant's Ex. C, Affidavit of Cynthia Brinkman, at ¶ 6; Defendant's Ex. L, Brooks Deposition Ex. 19.

[18] Defendant's Ex. C, Affidavit of Cynthia Brinkman, at ¶ 6; Defendant's Ex. M, Brooks Deposition Ex. 20.

[19] Defendant's Ex. C, Affidavit of Cynthia Brinkman, at ¶¶ 7–8; Defendant's Ex. N, Brooks Deposition Ex. 21.

This verbal warning was confirmed by Mr. Kerbs, the facility administrator.[20]

Ms. Brooks was given a Disciplinary Report by DON Stewart, and was suspended without pay for three days on June 11, 2004.  This disciplinary action resulted from several incidents.  First, Ms. Brooks had not properly documented in a resident's chart the resident's complaint of having a "horrible night" during plaintiff's shift.  Second, Ms. Brooks had indicated on resident charts that residents had received treatments which they, in fact, had not received.  Finally, Ms. Brooks was not properly documenting saturation levels on resident charts, instead placing her initials on the chart where the saturation level was to be indicated.[21]

On September 2, 2004, Ms. Brooks was disciplined again, and warned that if further counseling was needed that she would be terminated.  The Disciplinary Report issued on this occasion was based on several incidents.  First, Ms. Brooks was disciplined for tardiness. Second, Ms. Brooks had indicated on a resident chart that the resident had not had an adverse reaction to antibiotics when, in fact, no antibiotics had been administered to that resident. Finally, Ms. Brooks was disciplined for failing to supervise her subordinates and for telling coworkers that she did not know how to process orders or follow lab calendars.  On this occasion, DON Stewart noted that Ms. Brooks' job performance was more like that of a new employee than that of an experienced charge nurse and, accordingly, scheduled training for Ms. Brooks on September 10, that would cover how to fulfill paperwork obligations and documentation requirements.[22]

Ms. Brooks received her final Disciplinary Report from DON Stewart on September 9, 2004.

---

[20] Defendant's Ex. D, Affidavit of Theresa Stewart, at ¶ 8; Defendant's Ex. O, Brooks Deposition Ex. 5.

[21] Defendant's Ex. D, Affidavit of Theresa Stewart, at ¶ 9; Defendant's Ex. P, Brooks Deposition Ex. 6.

[22] Defendant's Ex. D, Affidavit of Theresa Stewart, at ¶ 10; Defendant's Ex. Q, Brooks Deposition Ex. 25.

This Disciplinary Report was based on Ms. Brooks' failure to properly prepare and administer medication through a feeding tube to a resident. The resident was receiving antibiotics through a feeding tube in order to treat an infection. The antibiotics were in a powder form and needed to be completely dissolved before being administered. However, on this occasion, the medication had not been completely dissolved, and as a result the pump administering the medication had become obstructed. After reviewing Ms. Brooks' personnel record, DON Stewart came to the conclusion that Ms. Brooks' job performance was placing the facility's residents in danger and made the decision to terminate Ms. Brooks' employment with Holiday.[23]

Prior to plaintiff's termination, DON Stewart met with Angie Serrano, another charge nurse, to find out her availability to work if changes were made in the shift and if she would be willing to work more hours at Holiday Resorts.

The Employee Handbook described the disciplinary action employees would be subject to if they did not follow the standards of conduct or guidelines for personal behavior. Ms. Brooks did not appeal her termination to the facility administrator, Mr. Kerbs. Nor, indeed, had Ms. Brooks appealed any of the previous disciplinary actions taken against her by DON Brinkman, or DON Stewart.[24] In total, plaintiff received twelve counseling statements and/or disciplinary reports in less than fifteen months. Of those, eight were from DON Brinkman and four were from DON Stewart. As outlined in the Employee Handbook, plaintiff had the right to appeal to the administrator if she felt she was not being treated fairly, and she failed to do so at any time.

After leaving Holiday, Ms. Brooks went to work as a night charge nurse with Flint Hills Care

---

[23] Defendant's Ex. D, Affidavit of Theresa Stewart, at ¶ 11; Defendant's Ex. R, Brooks Deposition Ex. 24.
[24] Defendant's Ex. B, Deposition of Doreitha Brooks, at 140, 150.

Center in Emporia, Kansas.[25]  Ms. Brooks began working at Flint Hills in April of 2005, and was terminated in June, 2005.[26]  Since December of 2006, Ms. Brooks has been unable to work due to health problems.[27]

Ms. Brooks brought the present action against Holiday on August 16, 2006, alleging that she was fired due to her age in violation of the Age Discrimination in Employment Act (ADEA).[28]  In support of her allegations, Ms. Brooks points to the written statements of her former co-workers. Dianne Chappell, a CNA at Holiday Resort, in a hand-written letter dated November 1, 2004, addressed "to whom it may concern," stated that she overheard some other nurses discussing Ms. Brooks' termination.  According to Ms. Chappell, the nurses stated that Ms. Brooks had been fired so that her position could be given to another nurse that DON Stewart wished to hire.[29]

Del Alcorn, another nurse at Holiday, wrote a letter to the Kansas Department of Human Resources on September 27, 2004, protesting Ms. Brooks' termination.  Ms. Alcorn did not address the issue of why Ms. Brooks was terminated in her letter, but stated that Ms. Brooks had been wrongfully accused, and was not the "guilty party."[30]  Ms. Alcorn's letter makes no mention of Ms. Brooks' age as the reason for her termination.[31]

Finally, Ms. Brooks points to an e-mail sent by Elizabeth Patton D'Angelo, an LPN who resigned from Holiday before Ms. Brooks' termination.[32]  In her e-mail, Ms. Patton D'Angelo states that, after DON Stewart began working at Holiday, she "noticed a verbalized desire to begin looking

---

[25] Defendant's Ex. B, Deposition of Doreitha Brooks, at 30–31.
[26] *Id.*
[27] *Id.* at 17.
[28] 29 U.S.C. § 621 *et seq.*
[29] Plaintiff's Ex. 4, Letter from Dianne Chappell, Doc. 38-5, at 1.
[30] Plaintiff's Ex. 5, Letter from Del Alcorn to KDHE, Doc. 38-6.
[31] *Id.*
[32] It is not clear from the record to whom this e-mail was sent.

over other coworkers to find grounds to terminate," and that "it was said that 'we need new, younger nurses.'"[33] Ms. Patton D'Angelo does not directly attribute this statement to any individual.

## II.    Standards of Review

### A.    Summary Judgment Standard

Summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law."[34] For the purpose of reviewing a summary judgment motion, a factual dispute is "material" only if it "might affect the outcome of the suit under the governing law."[35]  A "genuine" issue of fact exists where "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way."[36]

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact.[37]  To meet this standard, the moving party does not need to negate the claims of the non-movant; instead, the moving party can simply point out the absence of evidence for the non-moving party on an essential element of that party's claim.[38]  Once the moving party satisfies this initial burden in a properly supported motion, the burden shifts to the non-moving party to show that genuine issues remain for trial "as to those dispositive matters for which it carries the burden of

---

[33] Plaintiff's Ex. 6, E-mail from Elizabeth Patton D'Angelo, Doc. 38-7.

[34] Fed. R. Civ. P. 56(c).

[35] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[36] *Adler v. Wal-Mart Stores, Inc.,* 144 F.3d 664, 670 (10th Cir. 1998) (citing *Anderson,* 477 U.S. at 248).

[37] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  *See also Doebele v. Sprint Corp.*, 157 F. Supp. 2d 1191, 1195 (D. Kan. 2001); *Hicks v. City of Watonga*, 942 F.2d 737, 743 (10th Cir. 1991).

[38] *Adams v. Am. Guarantee & Liab. Ins. Co.,* 233 F.3d 1242, 1246 (10th Cir. 2000).

proof."[39]   The non-moving party may not rest on mere allegations or denials in its response in opposition to summary judgment, but "must set forth specific facts showing that there is a genuine issue for trial."[40]   Therefore, the mere existence of some alleged factual dispute between the parties will not defeat a properly supported motion for summary judgment.[41]   The court must consider the record in the light most favorable to the non-moving party.[42]   However, in a response to a motion for summary judgment, "a non-moving party cannot rely on ignorance of facts, on speculation, or on suspicion, and may not escape summary judgment on the mere hope that something will turn up at trial."[43]

###### B.        Sufficiency of Evidence to Support or Defeat a Motion for Summary Judgment

In order to sufficiently support or oppose a motion for summary judgment, Fed. R. Civ. P. 56(e)(1) requires that a "supporting or opposing affidavit must be made on *personal knowledge*, set out facts that would be *admissible in evidence*, and show that the affiant is competent to testify in the matters stated."[44]   The local rules of this District provide that all facts on which an opposition is based shall be presented by affidavit, declaration under penalty of perjury, and/or relevant portions of pleadings, depositions, answer to interrogatories or responses to requests for admission.[45] The local rules also require affidavits or declarations to be made on personal knowledge and by a person

---

[39] *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.,* 912 F.2d 1238, 1241 (10th Cir. 1990).

[40] *Liberty Lobby*, 477 U.S. at 256.

[41] *Id.*

[42]   *See Doebele*, 157 F. Supp. 2d at 1195.  *See also Deepwater Invs., Ltd. v. Jackson Hole Ski Corp.,* 938 F.2d 1105, 1110 (10th Cir. 1991).

[43] *Zapata v. IBM, Inc.,* 1998 U.S. Dist. LEXIS 21702 *17 (D. Kan. Sept. 29, 1998) (citing *Conaway v. Smith*, 853 F.2d 789, 793 (10th Cir. 1988)).

[44]Fed. R. Civ. P. 56(e)(1) (emphasis added).

[45] D. Kan. Local Rule 56.1(d).

competent to testify to the facts stated which shall be admissible evidence.[46]

"To be sure, the nonmoving party need not produce evidence 'in a form that would be admissible at trial,' but the content or substance of the evidence must be admissible."[47]  In particular, "hearsay testimony that would be inadmissible at trial may not be included in an affidavit to defeat summary judgment because '[a] third party's description of [a witness'] supposed testimony is not suitable grist for the summary judgment mill.'"[48] "Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."[49]   Hearsay is generally inadmissible.[50]   "To survive summary judgment, 'nonmovant's affidavits must be based on personal knowledge and set forth facts that would be admissible in evidence; conclusory and self-serving affidavits are not sufficient.'"[51]

## III.   Discussion

Plaintiff contends that defendant terminated her employment because of her age, not as a result of her inadequate job performance.  The ADEA makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual with respect to her compensation, terms, conditions, or

---

[46] *Id.*

[47] *Thomas v. IBM*, 48 F.3d 478, 485 (10th Cir. 1995) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)).

[48] *Id.* (quoting *Garside v. Osco Drug, Inc.*, 895 F.2d 46, 50 (1st Cir. 1990) (alterations in original).

[49] Fed. R. Evid. 801(c).

[50] Fed. R. Evid. 802.

[51] *Told v. Tig Premier Ins. Co.*, 149 Fed. Appx. 722, 725 (10th Cir. 2005) (quoting *Murray v. City of Sapulpa*, 45 F.3d 1417, 1422 (10th Cir. 1995)).  *See also U.S. Structures, Inc. v. J.P. Structures, Inc.*, 130 F.3d 1185, 1189 (6th Cir. 1997) ("[E]vidence submitted in opposition to a motion for summary judgment must be admissible.  Hearsay evidence . . . must be disregarded.").  *Tavery v. United States*, 32 F.3d 1423, 1427 n.4 (10th Cir. 1994) (Under Rule 56, statements supporting motion for summary judgment must be based on personal knowledge; "statements of mere belief must be disregarded.").

privileges of employment, because of such individual's age."[52]  To prevail on her ADEA claim, plaintiff must establish that age was a determining fact in the employer's challenged decision.[53] Plaintiff need not show that age was the sole reason, but she must show that age "made the difference" in any adverse employment action.[54]  Plaintiff may meet this burden by direct evidence of age discrimination or by the burden-shifting framework of *McDonnell Douglas Corp. v. Green*.[55]

### A.    Direct Evidence of Discrimination

A plaintiff alleging employment discrimination based on age may defeat a motion for summary judgment by producing direct evidence of discrimination in the challenged employment action.[56]  However, "an offer of . . . discriminatory statements, from which it [is] argued that the determining cause of an employment decision might be *inferred*, [is] not direct evidence of causation on the employment decision."[57]  "Direct evidence is evidence which 'demonstrates on its face that the employment decision was reached for discriminatory reasons.'"[58]

To establish a genuine issue of material fact regarding direct evidence of age discrimination, plaintiff offers the statements of former co-workers Dianne Chappell,[59] Del Alcorn,[60] R. Elizabeth

---

[52] 29 U.S.C. § 623(a)(1).

[53] *Greene v. Safeway Stores, Inc.,* 98 F.3d 554, 557 (10th Cir. 1996) (citing *Lucas v. Dover Corp.*, 857 F.2d 1397, 1400 (10th Cir. 1988)).

[54] *Id.* (quoting *EEOC v. Sperry Corp.*, 852 F.2d 503, 507 (10th Cir. 1988).

[55] 411 U.S. 792, 802–05 (1973).

[56] *See TWA, Inc. v. Thurston*, 469 U.S. 111, 121 (1984); *Furr v. AT&T Techs., Inc.*, 824 F.2d 1537, 1549 (10th Cir. 1987).

[57] *Ramsey v. City & County of Denver*, 907 F.2d 1004, 1008 (10th Cir. 1990) (emphasis added).

[58] *Thayer v. City of Holton*, 515 F. Supp. 2d 1198, 1210 (D. Kan. 2007) (quoting *Danville v. Regional Lab Corp.*, 292 F.3d 1246, 1249 (10th Cir. 2002)) (finding that "a remark that there were too many 'old-timers'" is not direct evidence of age discrimination).

[59] Plaintiff's Response to Defendant's Motion for Summary Judgment (Doc. 38) at 11; Ex. 4 (Doc. 38-5).

[60] *Id.*; Ex. 5 (Doc. 38-6).

Patton-D'Angelo[61] and Angie Serrano.[62]  The court finds that these statements do not comply with the requirements of Fed. R. Civ. P. 56 or this District's local rules.  The statements of each individual are merely letters or emails written on plaintiff's behalf.  They are not in the form of an affidavit, signed under penalty of perjury, or any other acceptable form as required by Local Rule 56.1.

Diane Chappell stated that plaintiff was not responsible for the feeding improperly administered on September 9, 2004.  Instead, according to Ms. Chappell, the course of events was a set up to fire plaintiff because Holiday Resorts wanted to make room for another nurse.  Del Alcorn stated that plaintiff was wrongfully terminated, she was well qualified and committed no wrong.  Further, Del Alcorn stated that "the charge" was not actually committed by plaintiff, but by others on the previous day.  R. Elizabeth Patton-D'Angelo stated that plaintiff was a good nurse with notable loyalty to the facility and residents.  She also stated that once DON Stewart began working at Holiday Resorts there was a desire to find grounds for terminating employees, and Ms. Patton-D'Angelo was asked if she had knowledge of any acts for which other employees could be "written up."  Finally, Ms. Patton-D'Angelo stated, "[i]t was said that 'we need newer, younger nurses.'"  Angie Serrano stated that on September 2, 2004, DON Stewart discussed staffing issues with her in anticipation of the termination of plaintiff.

The court holds that the statements of all four individuals are out-of-court statements offered to prove the truth of the matter asserted, and, therefore, inadmissable hearsay.  They attempt to establish that plaintiff was a quality employee, who performed her job duties well, but was wrongfully terminated from her position.  Even so, the statements are unreliable as they were not

---

[61]*Id.*; Ex. 6 (Doc. 38-7).
[62] *Id.*; Ex. 3 (Doc. 38-4).

contained in an affidavit, or in any other acceptable form evidencing that the statements were made under oath and based on personal knowledge.  As a result, the substance of the statements would not be admissible at trial.  Therefore, the court finds the statements of plaintiff's co-workers should not be considered with respect to the instant motion.

Even if the statements were to be considered in an acceptable form for the purposes of summary judgment, the court finds them unhelpful to plaintiff.  The statements of Diane Chappell and Del Alcorn make no mention whatsoever of Ms. Brooks' age or age discrimination in general. They are therefore unhelpful in establishing direct evidence of age discrimination. Elizabeth Patton-D'Angelo asserts in her statement that "it was said 'we need new, younger nurses.'"[63] Plaintiff contends that DON Stewart made this comment.  The court finds it is not clear from the statement itself who the speaker was, as Ms. Patton-D'Angelo did not attribute the statement to anyone. Regardless, the statement is hearsay within hearsay.  First, the portion which states "[i]t was said we need newer, younger workers" is a hearsay statement—made by someone other than the declarant while testifying, offered to prove the truth of the matter asserted—and thus should not be considered for purposes of this motion.[64]  Second, as discussed above, Ms. Patton-D'Angelo's statement is itself hearsay.  Therefore, the court finds the statement should be further excluded.

For the sake of argument, if Ms. Patton-D'Angelo's statement were to be considered by the court, it is still insufficient to establish direct evidence of age discrimination.   "Statements expressing a personal opinion, 'even when reflecting a personal bias or prejudice, do not constitute direct evidence of discrimination.'  Instead, by offering such statements, the plaintiff asks the fact-finder to infer that, because the defendant harbors personal opinions, the defendant acted with

---

[63]*Id.*; Ex. 6 (Doc. 38-7).
[64]*See* Fed. R. Civ. P. 56(e)(1).

discriminatory intent toward the plaintiff."[65]  "Proof by direct evidence requires evidence that the actual motive behind the [termination] was discriminatory animus.  Evidence demonstrating discriminatory animus in the decisional process needs to be distinguished from stray remarks in the workplace . . . or statements by decisionmakers unrelated to the decisional process."[66] "Alternatively, direct evidence . . . may consist of 'an existing policy which itself constitutes discrimination.'"[67]  Plaintiff offers no evidence of a discriminatory human resources policy, nor does she prove that discriminatory animus motivated the decision to terminate her.  In fact, plaintiff offers no evidence that DON Stewart's statement refers in any way to the decision to terminate plaintiff. The court is uninformed as to when, or to whom the statement was made.  Thus, the court cannot discern any evidence of a discriminatory motive.  As a result, the court holds plaintiff has failed to establish a genuine issue of material fact regarding direct evidence of discrimination.

> **B.     Indirect Evidence of Discrimination**
>
>> **1.     Plaintiff Has Failed to Establish a Prima Facie Case of Discrimination**

In the absence of direct evidence, a plaintiff may still defeat summary judgment by satisfying the burden-shifting analysis established by the U.S. Supreme Court in *McDonnell-Douglas Corp. v. Green.*[68]  In an ordinary Title VII case, when the plaintiff lacks direct evidence of discrimination

---

[65]*Power v. Koss Constr. Co.*, 499 F. Supp. 2d 1194, 1201 (D. Kan. 2007) (quoting *Shorter v. ICG Holdings, Inc.*, 188 F.3d 1204, 1207 (10th Cir. 1999) *overruled in part on other grounds by Desert Palace, Inc. v. Costa*, 539 U.S. 90, 123 (2003)) (finding that a letter stating "the future depends on the leadership of 'young managers'" is not direct evidence of age discrimination).

[66]*McCrary v. Aurora Pub. Sch.*, 57 Fed. Appx. 362, 367 (10th Cir. 2003) (citation omitted) (finding that a statement that "there were too many old, white, female teachers" is not direct evidence of discrimination).

[67]*Power*, 499 F. Supp. 2d at 1201 (quoting *Stone v. Autoliv ASP, Inc.*, 210 F.3d 1132, 1136 (10th Cir. 2000)).

[68]*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

but relies on persuasive circumstantial evidence of the same, the plaintiff must carry the initial burden of establishing a prima facie case of discrimination.[69]  If the plaintiff successfully does so, the burden shifts to the defendant to "articulate some legitimate, nondiscriminatory reason for the employee's rejection."[70]  Finally, the burden then shifts back to the plaintiff to "show that [defendant's] stated reason for [plaintiff's] rejection was in fact pretext."[71]

Generally, to establish a prima facie case of age discrimination in an employment termination, a plaintiff must show that (1) she was a member of the protected work group, over the age of 40; (2) she was doing satisfactory work; (3) she suffered an adverse employment action; and (4) defendant filled her position with a younger person.[72]

The Pretrial Order reflects the parties' stipulation to the first, third, and fourth elements.[73] Defendant contends that "plaintiff's factual contentions do not create a genuine issue of material fact that she was doing satisfactory work at the time of her termination."[74]  Plaintiff incorrectly asserts that defendant "does not contest Ms. Brooks can establish the first three elements of her prima facie case."[75]  When the record demonstrates that the plaintiff was not doing satisfactory work at the time

---

[69]*Id.* at 802.

[70]*Id.*

[71]*Id.* at 804.

[72]*Miller v. Eby Realty Group LLC*, 396 F.3d 1105, 1111 (10th Cir. 2005); *Power v. Koss Constr. Co.*, 499 F. Supp. 2d 1194, 1203 (D. Kan. 2007) (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000); *Rivera v. City & County of Denver*, 365 F.3d 912, 920 (10th Cir. 2004)).  "With respect to the fourth element, the Supreme Court has held that plaintiff need not show that defendant replaced him with an employee outside the protected class, *i.e.* under 40 years old.  Rather, . . . plaintiff must show a significant age difference between him and the worker who replaced him."  *Power*, 499 F. Supp. 2d at 1203 n.42 (citing *O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 312–13 (1996)).

[73]Pretrial Order (Doc. 33) at 2–3.

[74]Defendant's Brief in Support of Summary Judgment Motion (Doc. 35) at 14.

[75]Plaintiff's Response to Defendant's Motion for Summary Judgment (Doc. 38) at 12.

of termination, or for a substantial period of time prior to the termination, the establishment of a prima facie case may be precluded.[76]

The record reflects that plaintiff had been an LPN for nine years and a charge nurse for six years.  As a charge nurse, plaintiff was responsible for training CNAs, caring for residents, and charting residents' care.  Plaintiff was the only person on her shift who had authority to administer medication.  Even though plaintiff had held this position of responsibility for a significant length of time, her work history illustrates numerous instances of inadequate job performance. Namely, plaintiff had been disciplined for employment infractions on at least twelve separate occasions between the time that defendant acquired Holiday Resorts in February 2003 and the date of plaintiff's termination, September 9, 2004.  These infractions ranged from numerous failures to properly chart residents' care to improperly administering medication.  Eight of the counseling sessions or Disciplinary Reports were issued within approximately eight months by DON Brinkman. After several performance problems related to the administration of medicine, on February 26, 2004, plaintiff was warned by administrator Kerbs that another medication error would result in termination.

Four disciplinary actions were taken by DON Stewart over roughly the last three months of plaintiff's employment.  One infraction, on June 11, 2004, resulted in a three-day suspension without pay.  At that time plaintiff was disciplined for failing to document that a resident had a "horrible night."  Plaintiff has also indicated residents had received specific treatment when in reality they had not.  Finally, plaintiff improperly documented saturation levels on residents' charts.  Plaintiff

---

[76]*Burney v. County Comm'rs of Shawnee, Kan.*, 413 F. Supp. 2d 1195, 1199 (D. Kan. 2006).

16

received her final disciplinary report on September 9, 2004 when she committed another medication error.  Plaintiff was to administer medication through a feeding tube, but failed to properly dissolve the antibiotics, causing the pump administering the medication to become obstructed.  As noted earlier, plaintiff was the only employee on her shift authorized to administer medication.  Plaintiff did not appeal any of her disciplinary actions or termination to the facility administrator.  In sum, the court finds that time after time the defendant communicated to plaintiff deficiencies in her job performance.  Even after repeated counseling and warnings, plaintiff's performance did not improve and ultimately put at risk the residents of Holiday Resorts.

Therefore, the court finds plaintiff has failed to establish a genuine issue of material fact regarding whether she was performing satisfactory work sufficient to establish a prima facie case of age discrimination.  The only evidence plaintiff asserts regarding her relevant job performance is that she was qualified for her position when she was hired.  The court finds this information does not establish a genuine issue of material fact, as the performance problems occurred over the last fifteen months of her employment.

### 2.   Plaintiff Has Failed to Show that Defendant's Proffered Reason for Termination was a Pretext for Discrimination

Even if this court was to assume that plaintiff had successfully established a prima facie case of age discrimination, plaintiff fails to prove that defendant's proffered reason for her termination—inadequate job performance—is pretextual.  According to the *McDonnell Douglas* burden-shifting analysis, the burden is upon plaintiff to establish a genuine issue of material fact that defendant's proffered reason is pretext for discrimination.  If a plaintiff "presents evidence that the defendant's proffered reason for the employment decision was pretextual–i.e. *unworthy of belief*,

17

the plaintiff can withstand a summary judgment motion and is entitled to go to trial."[77]  Evidence of pretext may take a variety of forms.  Plaintiff can show pretext by pointing to "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable fact finder could rationally find them unworthy of credence."[78]

Typically, a plaintiff demonstrates pretext with evidence that (1) the defendant's stated reason for the adverse employment action was false; (2) the defendant acted contrary to a written company policy prescribing the action to be taken by the defendant under the circumstances; or (3) the defendant acted contrary to an unwritten policy or contrary to company practice when making the adverse employment decision affecting the plaintiff.[79]  "A plaintiff who wishes to show that the company acted contrary to an unwritten policy or . . . practice often does so by providing evidence that he was treated differently from other similarly-situated employees who violated work rules of comparable seriousness."[80]

In determining whether defendant's stated reason is pretextual, in this case the Court examines the facts as they appeared to DON Stewart, the person who made the decision to terminate plaintiff's employment.[81]  In addition, the Tenth Circuit has recognized that "a mistaken belief can

---

[77]*Randle v. City of Aurora*, 69 F.3d 441, 451 (10th Cir. 1995) (emphasis added).

[78] *Power v. Koss Construction Co.*, 499 F. Supp. 2d 1194, 1203 (D. Kan. 2007) (quoting *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir. 1997)).

[79]*Id.* (quoting *Kendrick v. Penske Transp. Servs. Inc.*, 220 F.3d 1220, 1230 (10th Cir. 2000)).

[80]*Id.* (citing *Aramburu v. The Boeing Co.*, 112 F.3d 1398, 1404 (10th Cir. 1997)).

[81] *Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1231 (10th Cir. 2000)("[A] challenge of pretext requires us to look at the facts as they appear to the person making the decision to terminate the plaintiff.")

18

be a legitimate reason for an employment decision and is not necessarily pretextual."[82] Consequently, in evaluating the legitimacy of an employer's proffered reason for terminating an employee, "[t]he relevant inquiry is not whether [the employer's] proffered reasons were wise, fair or correct, but whether [it] honestly believed those reasons and acted in good faith upon those beliefs."[83]   As the Tenth Circuit has explained, "[t]he reason for this rule is plain: our role is to prevent intentional discriminatory hiring practices, not to act as a 'super personnel department,' second guessing employers' honestly held (even if erroneous) business judgments."[84]

Having reviewed the record, the court finds that plaintiff has failed to establish a genuine issue of material fact regarding pretext.  Instead, plaintiff relies on her own speculation and that of her co-workers in an attempt to establish that defendant's proffered reason for termination—inadequate job performance—is unworthy of belief.  Specifically, plaintiff alleges that defendant's stated reason for plaintiff's termination was false and that defendant acted contrary to unwritten company practices when terminating plaintiff.   The court will address each of these arguments in turn.

### a.      Defendant's stated reason for termination was not false

Plaintiff argues defendant's position that Ms. Brooks was an unsatisfactory employee is false, unreasonable and without merit. In support of this argument plaintiff points to the various statements, as outline above, of her co-workers who asserted that plaintiff was a quality employee. She also states that she believes the Disciplinary Report she received on June 20, 2003 for failing

---

[82] *Id.* (quotation omitted).
[83] *Rivera v. City and County of Denver*, 365 F.3d 912, 924–25 (10th Cir. 2004) (quotation omitted).
[84] *Young v. Dillon Companies, Inc.*, 468 F.3d 1243, 1250 (10th Cir. 2006).

to document Medicare services was a forgery.  Further, she states that she never saw the Disciplinary Reports from June 25, 2003 and July 25, 2003 when she was disciplined again for failing to document Medicare services and a patient's prior fall.  Regarding the incident when plaintiff improperly administered medication through a feeding tube, which ultimately led to plaintiff's termination, plaintiff states that a jury could infer that the facts were fabricated as the error was never reported to the State of Kansas.  Further, plaintiff states that one week passed from the incident to her termination, when in earlier cases she was disciplined much quicker.

As discussed above, the court finds the statements of plaintiff's co-workers inadmissible as hearsay and failing to comply with this District's local rules regarding the presentation of factual material.[85]  Even if the court were to consider the statements, they are conclusory and based on personal opinion rather than substantiated facts, and therefore unpersuasive.  Regarding the alleged forgery or falsification of Disciplinary Reports, the court finds these allegations to be completely self-serving and unworthy of consideration.  Plaintiff has presented no evidence to support her allegations, such as a handwriting expert or a witness to dispute the facts contained in the reports.  Therefore, the court has no reason to question the authenticity of the documents.  The court also finds that plaintiff has failed to establish a genuine issue of material fact regarding the events surrounding her termination.  The fact that plaintiff's medication error was never submitted to state authorities does not tend to show that it was false.  Defendant's representative stated that after review of the incident, it was determined that no formal report needed to be filed.  Also, the fact that one week passed from the incident to plaintiff's termination illustrates that defendant fully investigated the medication error and plaintiff's work history before a decision was made to

---

[85] *See* D. Kan. Rule 56.1(d).

terminate plaintiff.

      **b.**      **Defendant acted in accordance with company policies and procedures**

Plaintiff also argues that defendant acted contrary to its company policies and practices by terminating her. She states that defendant's policy was to counsel employees rather than terminate them. Specifically, plaintiff points to her disciplinary actions on August 20, 2003, when she failed to document Medicare services, and February 26, 2004, when she was cited for several medication errors. Plaintiff contends that in each instance she was warned that she would be terminated for her next infraction, when in fact, she received later Disciplinary Reports and was not terminated. Plaintiff also alleges she never experienced work related problems until DON Stewart joined Holiday Resorts.

The court finds that defendant took active steps to counsel plaintiff throughout her tenure at Holiday Resorts, but ultimately these efforts were unsuccessful and the decision was made to terminate plaintiff. The court interprets the sequence of plaintiff's disciplinary actions as consistent with defendant's policies and representations to plaintiff. On July 28, 2003, plaintiff was disciplined for borrowing narcotics from one resident for the use with another resident, a practice which violated state law. On February 26, 2004, plaintiff was again disciplined for improperly administering medication to patients and warned another medication error would result in her termination. Plaintiff was suspended for three days on June 11, 2004 for several failures regarding documentation of resident's charts. A third medication error occurred when plaintiff failed to completely dissolve the antibiotics being administered through a feeding tube and was thereafter terminated on September 9, 2004. Again, plaintiff never appealed any of her disciplinary actions or termination

to the facility administrator.  The Employee Handbook states that Class II offenses will result in a written warning, then a three day suspension, then termination.  Class II infractions include failure to properly document reports of medical care and unsatisfactory performance.

The court also finds plaintiff's contention that she had no problems at Holiday Resorts until DON Stewart arrived simply does not square with the facts of the case.  Plaintiff received eight disciplinary reports over a period of approximately eight months from DON Brinkman.  She was also warned by administrator Kerbs after the February 26, 2004 Disciplinary Report that another medication error would be grounds for termination.  Certainly there is no dispute that plaintiff's job performance had been called into question as early as June 20, 2003, when she received her first disciplinary action.

Plaintiff also alleges that similarly situated workers who violated work rules of comparable seriousness were treated differently by defendant.  Plaintiff states that a 64-year-old worker was terminated because someone told DON Stewart a story about the worker.  She also submits that a 53-year-old worker was terminated because his badge was in the incorrect place.  Therefore, plaintiff contends that older workers were discharged without the benefit of a performance investigation, while younger workers received proper treatment as outlined in Employee Handbook.  To support her claims of disparate treatment, plaintiff cites her own testimony at the Emporia Human Relations Commission Pre-Investigation Conference held April 29, 2005.  Plaintiff has attached a summary of the conference as part of her supporting documentation.  The court finds this evidence should be excluded from consideration.

Fed. R. Evid. 803(8)(C) allows the court to exclude evidence if "the source of information or other circumstances indicate lack of trustworthiness."  Courts may look to the following factors

in determining the admissibility of reports: (1) the timeliness of the investigation; (2) the special skill or experience of the investigator; and (3) whether a hearing was held and the level at which it was conducted.[86]   The trial court is the first and best judge of whether tendered evidence meets the standard of trustworthiness and reliability.[87]   Here, plaintiff has provided no information to show that an investigation was actually conducted.   Rather, plaintiff has submitted a summary of what is called a pre-investigation conference.   By its terms a future investigation was contemplated.   There is no evidence that it was ever conducted.   Without knowledge of foundational information, the court is uninformed regarding the basic nature of the proceedings, and, therefore, will not consider the statements purportedly offered at the conference.

If the statements were considered, they still do not establish a genuine issue of material fact regarding pretext.   No evidence has been presented to show the circumstances under which the other employees were terminated.   Plaintiff cites no specific examples of younger workers receiving more preferential treatment.   She instead relies on conclusory allegations that younger workers were treated more favorably.   The court is completely uninformed as to events surrounding the termination of younger employees, their work history, or even who the decisionmaker was.[88]

### c.   DON Stewart's alleged statements do not establish pretext

---

[86] Fed. R. Evid. 803(8), 28 U.S.C.A. (1975) Notes of the Advisory Committee.

[87] *Franklin v. Skelly Oil Co.*, 141 F.2d 568, 572 (10th Cir. 1944)

[88] *See Aramburu v. Boeing Co.*, 112 F.3d 1398, 1404 (10th Cir.1997) (Similarly situated employees, for the purposes of demonstrating employment discrimination, are those employees who deal with the same supervisor and are subject to the same standards governing performance, evaluation and discipline as the employee asserting the claim.). *See also Rivera v. City and County of Denver*, 365 F.3d 912, 922 (10th Cir .2004) (Employees who were allegedly disciplined less harshly for similar misconduct by a supervisor other than the supervisor responsible for the adverse employment action do not qualify as "similarly situated employees" under the ADEA and Title VII.).

While the court has previously concluded that Ms. Patton-D'Angelo's statements should not be considered as they are hearsay, out of an abundance of caution, the court will evaluate whether, if admissible, they establish pretext.  DON Stewart's alleged comments about "newer, younger nurses," although not direct evidence, under proper circumstances, could be considered circumstantial evidence of pretext.  Age-related comments referring directly to the worker may support an inference of age discrimination."[89]   To indirectly establish pretext through such statements, plaintiff must show some nexus between the discriminatory statements and the employment decision.[90]  Although isolated comments that are unrelated to the challenged action do not show discriminatory animus by themselves, the necessary causal nexus may be shown if the allegedly discriminatory comments were directed at the plaintiff.[91]   In this case, DON Stewart's alleged statement about hiring younger nurses, if made, was not made directly to plaintiff and does not bear the necessary nexus to plaintiff's termination.  Ms. Patton-D'Angelo's statement does not say when or to whom the statement was made.  Thus, the court is unable to determine what relationship, if any, exists between the statement and plaintiff's termination.  Notably, plaintiff herself does not claim to have ever heard any discriminatory statements and never reported any discrimination while an employee at Holiday Resorts.  The court also fails to find any evidence of age discrimination from the fact that DON Stewart checked the work availability of Angie Serrano before terminating plaintiff.  It appears that no reference was made to plaintiff's age, or even for the reasons of her termination.

## IV.    Conclusion

---

[89] *Cone v. Longmont United Hosp. Ass'n*, 14 F.3d 526, 531 (10th Cir. 1994).
[90] *Walker v. Faith Techs., Inc.*, 344 F. Supp. 2d 1261, 1277 (D. Kan. 2004).
[91] *Rea v. Martin Marietta Corp.*, 29 F.3d 1450, 1457 (10th Cir. 1994).

Plaintiff has failed to provide direct evidence of age discrimination.  Furthermore, she has failed to establish the second element of a prima facie age discrimination case, namely, that she was doing satisfactory work prior to and at the time of termination.  Finally, plaintiff has failed to establish that defendant's proffered reason for her termination was a pretext for age discrimination.  Accordingly, plaintiff has failed to produce evidence upon which a reasonable jury could find that defendant discriminated against her on the basis of age.  Accordingly, defendant's motion for summary judgment is granted.

**IT IS THEREFORE ORDERED** that Defendant's Motion for Summary Judgment (Doc. 34) is hereby granted.

Judgment shall be entered in favor of defendant in accordance with this order and the costs of this action shall be taxed to the plaintiff.

**IT IS SO ORDERED.**

Dated this 30th day of September, 2008, at Topeka, Kansas.

s/ K. Gary Sebelius
K. Gary Sebelius
U.S. Magistrate Judge